UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGACIANO VERA, | No. 2:14-cv-2616-CKD |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively. For the reasons discussed below, the court will grant plaintiff's motion for summary judgment, deny the Commissioner's cross-motion for summary judgment, and remand this matter under sentence four of 42 U.S.C. § 405(g).

I.   BACKGROUND

Plaintiff, born December 19, 1966, applied on August 30, 2011 for DIB and SSI, alleging disability beginning September 10, 2009. Administrative Transcript ("AT") 134-142. Plaintiff

////

////

1

alleged he was unable to work due to back and stomach problems, depression, and anxiety. AT 71. In a decision dated March 19, 2013, the ALJ determined that plaintiff was not disabled.[1] AT 12-24. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.
>
> 2. The claimant has not engaged in substantial gainful activity since September 10, 2009, the alleged onset date.
>
> 3. The claimant has the following severe impairments: degenerative disc disease and affective mood disorder (depression).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 *et seq.* Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 *et seq.* Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a), 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920, 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a reduced range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). Specifically, the claimant can lift and or carry 10 pounds occasionally and less than 10 pounds frequently; he can stand and or walk (with normal breaks) at least two hours in an eight hour workday; he can sit (with normal breaks) for about six hours in an eight hour workday; he can occasionally climb ramps and stairs; he can never climb ladders, ropes or scaffolds; he can occasionally balance, stoop, kneel, crouch, or crawl; he is limited to simple, routine, repetitive tasks; he is limited to only occasional public contact; and he can never work around hazards such as moving, dangerous machinery and unprotected heights.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on December 19, 1966 and was 42 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 10, 2009, through the date of this decision.

AT 14-24.

II.   ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) improperly assigned reduced weight to the opinions of Dr. Senegor, plaintiff's primary treating physician, and Dr. Bugna, an examining physician, without articulating specific and legitimate reasons in support of that determination; and (2) failed to provide clear and convincing reasons for finding plaintiff's testimony less than fully credible.

/////

3

III.     LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

IV.     ANALYSIS

A.   The ALJ Erred in Considering the Medical Evidence

First, plaintiff argues that the ALJ erred by discounting the opinions of Dr. Senegor, plaintiff's primary treating physician, and Dr. Bugna, an examining physician, without providing specific and legitimate reasons for doing so.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

4

1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

A.  *Dr. Senegor*

The record demonstrates that Dr. Senegor, a neurological surgeon, acted as plaintiff's primary treating physician from August 4, 2011 through February 7, 2013, and indicates that his treating physician relationship with plaintiff continued past that later date. See AT 274, 433. On January 25, 2012, Dr. Senegor completed a "Physical Residual Functional Capacity Questionnaire," which provided Dr. Senegor's opinion regarding the impact plaintiff's physical impairments had on his ability to perform basic work-related functions. AT 342-47. Therein, Dr. Senegor diagnosed plaintiff with "spinal lumbar stenosis," which Dr. Senegor categorized as "severe" and as causing plaintiff "low back/bilateral leg pain." AT 342. He also opined that plaintiff's impairments would "frequently" cause him pain or other symptoms severe enough to

interfere with plaintiff's ability to maintain the level of attention and concentration required to perform even simple work tasks, meaning that plaintiff's impairments would impose such a limitation between 34 percent and 66 percent of an eight-hour workday.  Id.  Furthermore, Dr. Senegor opined that plaintiff could walk between one and two blocks before needing rest, stand for up to one hour at a time, and sit for up to one hour at a time.  AT 344.  He also determined that plaintiff could sit, stand, or walk for less than two hours each during an eight-hour workday. Id.  He further opined that plaintiff would need to take 10 minute walks every 45 minutes, a job that permits shifting positions at will, and to take unscheduled sitting breaks lasting ten-to-fifteen minutes in duration.  AT 344-45.  Dr. Senegor also opined that plaintiff could occasionally climb stairs and lift and carry up to 10 pounds.  AT 345-46.  He further found that plaintiff could never twist, stoop, crouch, or climb ladders, but had no significant limitations in performing repetitive reaching, handling, or fingering activities.  AT 346.  Given plaintiff's impairments, Dr. Senegor determined that plaintiff would need to be absent from work about three days per month pending flare ups.  Id.  Finally, Dr. Senegor determined that plaintiff's impairments had lasted or could be expected to last for at least 12 months.  AT 343, 346.

The ALJ gave the following rationale in support of his decision to discount Dr. Senegor's treating opinion:

> Generally, a treating physician's opinion is given more weight because it is more likely to be based on a detailed, longitudinal picture of the claimant's impairments. However, although Dr. Senegor is a treating physician, and began treating plaintiff about two years ago, the medical evidence of record indicates that the claimant saw Dr. Senegor only about four or five times during this two-year period.  Also, at the claimant's last visit with Dr. Senegor, the claimant was not scheduled for follow up until six months.  In addition, Dr. Senegor's treatment notes indicate that the claimant declined treatment recommendations by Dr. Senegor on more than one occasion.  For these reasons, Dr. Senegor's opinion is given reduced weight.

AT 20.  For the reasons that follow, the court finds these reasons insufficient to justify the ALJ's decision to discount Dr. Senegor's opinion.

First, the ALJ found the fact that Dr. Senegor examined plaintiff on four or five occasions throughout the course of the treating relationship documented in the record undermined his opinion.  However, the record demonstrates that Dr. Senegor had examined plaintiff more times

6

and had a treating relationship with plaintiff longer than any of plaintiff's other physicians, thus providing him with the greatest familiarity with and best longitudinal view of the impact of plaintiff's impairments of any of the physicians in the record. See 20 C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source."); 20 C.F.R. § 416.927(c)(2)(i) (same). Accordingly, the ALJ's reasoning is unsupported by substantial evidence from the record.[2]

Second, the ALJ determined that the six-month gap between plaintiff's last-documented visit with Dr. Senegor and the next scheduled visit undermined Dr. Senegor's RFC opinion. The mere existence of such a gap in treatment, however, does not demonstrate that plaintiff's condition was improving or that he was not as functionally limited as Dr. Senegor opined. To be sure, the record of Dr. Senegor's follow-up examination of plaintiff after the last visit referenced by the ALJ indicates that plaintiff's spinal impairments continued to worsen.[3] AT 433. Accordingly, the ALJ's rationale was not supported by substantial evidence from the record.

Finally, the ALJ determined that Dr. Senegor's opinion was entitled to reduced weight because plaintiff declined Dr. Senegor's treatment suggestions that he receive epidural injections and/or undergo spinal surgery. The Commissioner argues that the ALJ's reasoning was sufficient to discount Dr. Senegor's opinion because 20 C.F.R. §§ 404.1530, 416.930 require a denial of benefits when a claimant unreasonably refuses to undergo prescribed treatment. Indeed, in

---

[2] Furthermore, the court notes that the ALJ assigned "substantial weight" to the opinion of Dr. Bullard, a State agency physician who only reviewed plaintiff's records. See Lester, 81 F.3d at 832 (holding that the ALJ's reasoning that an examining physician's opinion was entitled to lesser weight because his opinion was "based on 'limited observation' of the claimant," was an insufficient "reason to give preference to the opinion of a doctor who has *never* examined the claimant" (emphasis in original)).

[3] This record was not before the ALJ, but was submitted for review to the Appeals Council. AT 5. When the Appeals Council considers evidence provided by a claimant after the ALJ's decision has been issued, the court reviews both the ALJ's decision and additional material submitted to the Appeals Council. Ramirez v. Shalala, 8 F.3d 1449, 1451-52 (9th Cir. 1993).

general, a claimant seeking disability benefits must follow prescribed treatment that can restore his ability to work, unless the claimant has a good reason for not following the prescribed treatment. See 20 C.F.R. §§ 404.1530, 416.930. However, the record here does not support a finding that plaintiff should be denied benefits under this standard, or, more importantly to the issue presently disputed by the parties, that Dr. Senegor's medical opinion should be entitled to lesser weight.

First, the ALJ failed to make any finding that either epidural injections or spinal surgery could have restored his ability to work or improved his condition to a degree that would have undermined Dr. Senegor's functional findings. Indeed, while Dr. Senegor suggested plaintiff undergo such forms of treatment, he never opined on the probability that those treatment avenues would be successful or on plaintiff's likely level of functioning after he followed through with either recommendation. See, e.g., AT 272, 275, 422-23. Accordingly, the ALJ could not properly determine that plaintiff's refusal of these suggested treatments established non-disability or otherwise demonstrated that the functional limitations opined by Dr. Senegor were overly severe because plaintiff would have been less impaired had he undergone these forms of treatment. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993) (rejecting non-disability determination premised on the plaintiff's failure to follow prescribed treatment where the ALJ failed to make any factual finding that the plaintiff could reasonably remedy her condition with prescribed treatment).

Second, a claimant must decline *prescribed* treatment in order to be denied benefits under sections 404.1530 and 416.930. Here, Dr. Senegor merely suggested and encouraged plaintiff to undergo spinal surgery and/or take epidural injections; he never prescribed such treatment. AT 272, 275, 311, 313, 422-23. Furthermore, the record reflects that plaintiff had not completely rejected such treatment. To be sure, a note written by Dr. Senegor dated June 21, 2012 stated that plaintiff was still open to the possibility of treating his spinal impairments with epidural injections, but wanted to "do some internet research before he decide[d]." AT 423.

/////

/////

1       Finally, while plaintiff's repeated refusals to undergo Dr. Senegor's suggested treatments
2  might reasonably undermine plaintiff's own subjective complaints regarding the extent of his
3  limitations and pain; they do not necessarily undermine Dr. Senegor's opinion, which was based
4  on objective clinical findings and a longitudinal view of the impact plaintiff's impairments had on
5  his physical functioning.  In short, the ALJ failed to adequately explain how plaintiff's failure to
6  undergo Dr. Senegor's suggested treatments somehow undermined the accuracy of the functional
7  limitations Dr. Senegor opined.
8       The ALJ's three stated reasons for discounting Dr. Senegor's treating opinion do not
9  constitute specific and legitimate reasons for making such a determination.  Accordingly, the
10 court finds that reversal is warranted based on the ALJ's failure to properly consider Dr.
11 Senegor's treating opinion.
12      B.  *Dr. Bugna*
13      The ALJ also failed to give specific and legitimate reasons for discounting the opinion of
14 Dr. Bugna.  On January 4, 2011, Dr. Bugna, an orthopedic surgeon who examined plaintiff in
15 connection with a workers' compensation claim, completed a supplemental report concerning the
16 impact of plaintiff's impairments on plaintiff's ability to work.  AT 243-46.  Therein, he noted
17 that an imaging study conducted on November 18, 2010 showing "[i]ncreased central disc
18 protrusion at L4-5 now causing moderate spinal canal stenosis and mild increase in degree of
19 neural foraminal stenosis."  AT 243.  Dr. Bugna opined that this study "indicate[d] that
20 [plaintiff's] lumbosacral spine difficulty (degenerative changes and particularly intervertebral disc
21 disruption) has indeed become worse."  Id.  Based on this data, Dr. Bugna opined that plaintiff
22 "has reached **maximum medical improvement/permanent and stationary status** as of the date
23 of the [November 18, 2010] imaging study."  AT 244 (emphasis in original).  Dr. Bugna
24 recommended that plaintiff initially undergo non-surgical treatment for his back impairment
25 "including an ongoing self-monitored spinal exercise program," but also noted that "the
26 possibility of surgical intervention at [plaintiff's] lumbosacral spine is present and is contingent
27 upon the level of symptomology experienced by him."  Id.  Based on his findings, Dr. Bugna
28 opined that plaintiff would be:

> precluded from job activities that require prolonged sitting or standing without the ability to change from one position to the other after approximately 15 to 30 minutes, ambulation for a distance of greater than approximately 2 blocks, activities requiring repetitive spinal flexion as well as repetitive twisting motions, pulling and pushing, and repetitive lifting [of] objects weighing greater than approximately 5 pounds.

Id.

The ALJ gave the following reasons for assigning "minimal weight" to Dr. Bugna's opinion:

> Dr. Bugna's opinion is inconsistent with the record as a whole, and was given for purposes of workers' compensation, which uses criteria other than the criteria used by the Social Security Administration to determine disability.  In addition, Dr. Bugna did not have the benefit of reviewing additional evidence received after he wrote this letter, including an MRI taken on October 2011 which indicated that the claimant had only mild degenerative disc disease, and an MRI in January 2013, which indicated a slight reduction in the disc bulges at L4-L5 and L3-L4.  For these reasons, Dr. Bugna's opinion is given reduced weight.

AT 21.

First, the ALJ found that Dr. Bugna's opinion was inconsistent with the record as a whole, but failed to specify what evidence, or lack of evidence, undermined Dr. Bugna's opinion. Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required . . . ."). By failing to do so, the ALJ has prevented the parties and the court from being able to analyze his reasoning. Accordingly, the ALJ could not properly rely on this reason to support his decision to discount Dr. Bugna's opinion.

Second, the ALJ determined that Dr. Bugna's opinion was entitled to less weight because it was given in connection with a workers' compensation claim rather than plaintiff's applications under the Social Security Act. "Although the California Guidelines for Work Capacity are not conclusive in a social security case, . . . , the ALJ is entitled to draw inferences logically flowing from the evidence." Macri v. Chater, 93 F.3d 540, 543-44 (9th Cir. 1996) (citations and quotation

marks omitted). Here, while Dr. Bugna's opinion contained disability ratings not directly relevant to an analysis of plaintiff's impairments under the Social Security Act, it also contained a discussion of specific functional limitations that Dr. Bugna found to have been caused by plaintiff's physical impairments. AT 244-45. In particular, Dr. Bugna opined limitations regarding the impact plaintiff's impairments had on his ability to perform work-related functions such as sitting, standing, walking, postural activities, pushing and pulling, and lifting and carrying. AT 244. Despite the existence of these opined limitations that are directly applicable to the functional considerations under the Social Security Act, the ALJ decided to discount the entirety of Dr. Bugna's opinion on the basis that it was developed under the criteria used to assess plaintiff's workers' compensation claim. Such reasoning could not properly support the ALJ's decision to discount the portions of Dr. Bugna's examining opinion that discussed functional limitations that were pertinent to determining plaintiff's RFC under the Social Security Act. See Macri, 93 F.3d at 543-44. Cf. Allen v. Comm'r of Soc. Sec., 498 F. App'x 696, 698 (9th Cir. 2012) (unpublished) (holding ALJ's failure to consider the California workers' compensation ratings contained in a physician's opinion not erroneous because such ratings were inapplicable in a Social Security case and the ALJ considered the rest of the physician's report, which indicated that the plaintiff did not have a severe mental impairment).

Finally, the ALJ determined that Dr. Bugna's opinion was entitled to lesser weight because Dr. Bugna did not review an x-ray[4] of plaintiff's spine taken in October of 2011 and an MRI of plaintiff's spine taken in January of 2013 when forming his opinion regarding the functional impact of plaintiff's physical impairments. While an ALJ may use such reasoning to discount a physician's opinion when the record provides evidentiary support indicating that the later records are contrary to the physician's opinion, there is no such support here.

/////

/////

---

[4] Both parties state in their briefing that the ALJ mistakenly referred to this x-ray as an MRI. ECF No. 16-1 at 17; ECF No. 19 at 20, n.2. A review of the record confirms that the ALJ mistakenly referred to the x-ray taken of plaintiff's lumbar spine on October 4, 2011 as an MRI. AT 408.

1	While the October 4, 2011 x-ray indicated that plaintiff did not have spondylolisthesis,
2	had only "mild" degenerative disc disease, and "no abnormal movement with flexion and
3	extension" of the lumbar spine, AT 272, 408, other evidence in the record shows that the purpose
4	of the x-ray was to determine whether plaintiff had spondylolisthesis in his lumbar spine, AT 275.
5	Prior to this x-ray, an MRI was taken of that region of plaintiff's spine and it was determined that
6	plaintiff exhibited stenosis in the L4-5 region that was "undoubtedly the cause of his symptoms."
7	Id. The record indicates that the results of the October 2011 x-ray did not conflict with this
8	finding. Indeed, Dr. Senegor determined that plaintiff's "symptoms remain unchanged" even
9	after reviewing the October 2011 x-ray results and finding that plaintiff's lumbar spine "show[ed]
10	good alignment" and did not exhibit spondylolisthesis. AT 272. Dr. Bugna reviewed the prior
11	MRI when developing his functional opinion, AT 243, and the medical record indicates that the
12	October 2011 x-ray did not conflict with that prior assessment.

13	Similarly, with regard to the January 2013 MRI, the record contains a note from Dr.
14	Senegor dated February 7, 2015, wherein Dr. Senegor stated that he had reviewed the MRI results
15	and stated that the results showed that plaintiff had "3 degenerated discs at L3-4, L4-5, and L5-S1
16	with desiccation, bulging, and some height loss," and "lumbar stenosis at L3-4 and L4-5,
17	substantially worse at L4-5."[5] AT 433. He further determined that a review of the MRI
18	demonstrated a "worsening of symptoms and intractability of conservative management." Id.
19	Accordingly, the record indicates that the January 2013 MRI results were not inconsistent with
20	Dr. Bugna's opinion.

21	Because the imaging evidence referenced by the ALJ indicates that plaintiff's spinal
22	impairments were not improving after Dr. Bugna issued his opinion on January 4, 2011, the
23	ALJ's reasoning that Dr. Bugna's findings regarding plaintiff's functional limitations were too
24	severe in light of that later-developed medical evidence was not supported by the record.[6]

---

[5] While Dr. Senegor's note was added to the record for the first time when this case was before the Appeals Council, it is still evidence that the court may consider for purposes of determining whether the ALJ's decision was based on substantial evidence. Ramirez, 8 F.3d at 1451-52.

[6] The Commissioner also argues in her cross-motion for summary judgment that the ALJ properly discounted the opinions of both Dr. Bugna and Dr. Senegor because they were inconsistent with

12

The ALJ's stated reasons for discounting Dr. Bugna's opinion were insufficient to support such a determination. Accordingly, reversal of the ALJ's decision is warranted on the further basis that he failed to properly consider Dr. Bugna's opinion.

### C. *ALJ's Assignment of "Substantial Weight" to the Non-Examining Physician's Opinion was Erroneous*

In light of the ALJ's failure to provide proper reasons for discounting the opinions of Dr. Senegor and Dr. Bugna, the court also finds that the ALJ's assignment of "substantial weight" solely to the non-examining opinion of Dr. Bullard to be in error. The ALJ determined that Dr. Bullard's opinion was entitled to greater weight than those of plaintiff's treating and examining physicians with regard to the functional impact of plaintiff's physical impairments because it was "consistent with the record as a whole, as well as with [plaintiff's] activities of daily living." AT 21. However, the ALJ failed to provide any discussion of what specific evidence from the record supported this conclusion. This lack of specificity is especially problematic in a case such as here, where the ALJ discounted the opinions of plaintiff's treating and examining physicians in favor of the opinion of a non-examining physician. The opinion of a non-examining physician, without the support of other evidence, is insufficient to discount the opinion of a treating or examining physician. Lester, 81 F.3d at 831.

Furthermore, the ALJ assigned greater weight to Dr. Bullard's opinion despite the fact that Dr. Senegor was a neurological surgeon and Dr. Bugna was an orthopedic surgeon, making both of them specialists with regard to plaintiff's spinal impairments. Generally, the regulations direct an ALJ to give more weight to the opinion of a specialist in the relevant area. See 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the opinion of a specialist about medical

---

plaintiff's testimony regarding his daily activities. However, the ALJ never provided such a reason in support of his decision to discount these physicians' opinions. The court is constrained to review only the reasoning asserted by the ALJ, and cannot consider post hoc reasoning provided by the Commissioner. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (noting that a reviewing court is "constrained to review the reasons the ALJ asserts"). Accordingly, the court declines to consider the Commissioner's additional reason in support of the ALJ's determination that the opinions of Dr. Bugna and Dr. Senegor were entitled to reduced weight.

13

issues related to his or her area of specialty than to the opinion of a source who is not a specialist"); Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (explaining that an opinion concerning mental impairments by a specialist in the relevant field of psychiatry was entitled to greater weight). Given that the ALJ failed to provide sufficient reasons to discount the treating and examining specialists' opinions while also inadequately supporting his decision to assign the greatest weight to a non-examining physician's opinion, the court finds that the ALJ committed reversible error in making his RFC determination.

### D. *Remand for Further Consideration of the Record is Warranted*

When the court finds that the ALJ committed prejudicial error, it has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison v. Colvin, 759 F.3d 003, 1020 (9th Cir. 2014). However, generally, if the court finds that the ALJ's decision was erroneous or not supported by substantial evidence, the court must follow the "ordinary remand rule," meaning that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014). A remand for an award of benefits is inappropriate where the record has not been fully developed or there is a need to resolve conflicts, ambiguities, or other outstanding issues. Id. at 1101.

As an initial matter, the court notes that while plaintiff has made a cursory assertion that he is entitled to an award of benefits, ECF No. 16-1 at 19,[7] he has failed to proffer any substantive

---

[7] In his reply brief, plaintiff somewhat clarifies that remand for benefits is warranted because the medical opinions improperly considered by the ALJ "support a finding of disability on remand, and the record is fully developed." ECF No. 20 at 8. However, plaintiff fails to demonstrate further administrative proceedings in this matter would serve no useful purpose, especially in light of the outstanding issues discussed below.

argument for that remedy in light of the foregoing case authorities and has made no attempt to show that this case raises the rare circumstances that would warrant remand for an award of benefits. Accordingly, this circumstance militates in favor of the court exercising its discretion to remand for further proceedings. See Vasquez v. Astrue, 572 F.3d 586, 597 (9th Cir. 2008) (remanding for further proceedings where neither party presented any argument about the effect of the ALJ's errors, meaning that there were no facts presented that clearly indicated the proper outcome).

Furthermore, there are still outstanding issues for which further proceedings would prove beneficial. For instance, on remand, the ALJ should explain what evidence or lack thereof he is relying on in support of his reasoning that Dr. Bugna's opinion should be given lesser weight because it conflicts with the record as a whole. Similarly, he should identify with greater particularity the evidence supporting his assignment of "substantial weight" to the non-examining opinion of Dr. Bullard. Furthermore, the ALJ should determine whether the treatment methods proposed to plaintiff by Dr. Senegor would have materially improved the symptoms of plaintiff's spinal impairments. In addition, the ALJ should consider the additional medical evidence that was submitted by plaintiff for the first time to the Appeals Council and its impact on the ALJ's consideration of the medical opinion evidence.

Accordingly, remand for further administrative proceedings is warranted for further consideration of the medical opinions in the record, particularly the opinions of Dr. Senegor, Dr. Bugna, and Dr. Bullard. The ALJ is also free to develop the record in other ways or reconsider other aspects of his decision, as needed. Importantly, the court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, on remand. The court also does not instruct the ALJ to credit any particular opinion or testimony. The ALJ may ultimately find plaintiff disabled during the entirety of the relevant period; may find plaintiff eligible for some type of closed period of disability benefits; or may find that plaintiff was never disabled during the relevant period—provided that the ALJ's determination complies with applicable legal standards and is supported by substantial evidence in the record as a whole.
/////

E.  *Other Issues*

Plaintiff also asserts that the ALJ erred in his finding that plaintiff's testimony was not credible.  Because the court finds that remand for further proceedings is necessary on the basis of the ALJ's erroneous consideration of the medical opinion evidence, it declines to decide the credibility issue at this juncture.  The ALJ's reasoning for discounting plaintiff's testimony was based in part on considerations similar to those used to support his erroneous decision to discount the opinions of Dr. Senegor and Dr. Bugna.  Accordingly, the ALJ's findings regarding credibility may change once those opinions have been reconsidered.  On remand, the ALJ will have the opportunity to reassess the credibility of plaintiff's testimony in light of findings made at that time with regard to the medical opinion evidence and the record as a whole.

V.   CONCLUSION

For the reasons stated herein, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and for further findings addressing the deficiencies noted above.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 16) is granted for purposes of further development and reconsideration of the record consistent with the court's directions set forth above;

2. The Commissioner's cross-motion for summary judgment (ECF No. 19) is denied; and,

3. This matter is remanded for further proceedings consistent with this order.

Dated:  November 18, 2015

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

11 vera2616.ss